UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

LAWRENCE V. CARTY,                           )
                                             )
                         Plaintiff,          )        07-2214
                                             )
        v.                                   )
                                             )
ILLINOIS ENVIRONMENTAL                       )
PROTECTION AGENCY,                           )
                                             )
                         Defendant.          )

ORDER

The plaintiff, Lawrence V. Carty ("Carty") has filed a complaint against his former employer, the Illinois Environmental Protection Agency ("IEPA") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  Carty, an African American, filed a charge of discrimination when he was passed over for promotion in 2003; thereafter, he alleges, his employer engaged in retaliatory conduct.  Carty filed an EEOC charge of retaliation and received a right-to-sue letter.  This action followed.

The case has been beset with delays which need not be recited here.  Suffice it to say that the parties – plaintiff and defendant both – have received extensions of time to complete discovery and file dispositive motions.  On July 30, 2010, the parties filed cross-motions for summary judgment.  Their responses in opposition were due on August 23, 2010.[1]  On August 31, 2010, the IEPA filed a motion to file a response *instanter*.  The motion was granted.  The court noted that Carty's response in opposition was also overdue and granted him until September 3, 2010, at 5 p.m. to do so.  He did not file a response.  This court's Local Rules specify that a reply is limited to issues raised in the response.  Because Carty failed to respond, the IEPA could not file a reply.

BACKGROUND

Carty, a chemist, was hired by the IEPA to perform testing on water, soil, and air

---

[1]This is in accordance with this court's Local Rule 7.1(D)(2).  Although Rule 7.1(D) does not apply to pro se litigants, the court has made clear that responses and replies would be filed in accordance with the Local Rules.  Local Rule 7.1(D) specifies the format for dispositive motions, responses and replies.  Pro se litigants sometimes have difficulty adhering to this format, and for this reason the court denied the defendant's motion to strike Carty's motion for failing to follow the specified format.  But the court did not set aside the timetable in Local Rule 7.1(D).  In addition, the timetable in this court's Local Rules is the same as that specified in Federal Rule of Civil Procedure 56(c)(1)(B)-(C).

samples.  In 2003, Carty applied for a promotion to senior public service administrator.  Carty did not receive the promotion, which he believed was denied because of his race.  He filed an EEOC charge claiming that the individual who received the promotion was a "less qualified Hispanic."  Jon Wilson ("Wilson") was awarded the position.  Wilson is African American.

Carty claims that after he filed the EEOC charge, Wilson began a pattern of retaliatory action against Carty.  Carty filed an EEOC charge claiming that his suspension without pay in July 2005 was in retaliation for his having filed the first EEOC charge.

After receiving a right-to-sue letter on his retaliation charge, Carty commenced this action. In his complaint Carty states,

I filed an E.E.O.C. complaint in 2004 contending that the hiring of Jon Wilson as laboratory manager was discriminatory even though he was an African-American. Jon Wilson was the least qualified (scored lowest on exam) of all candidates both black & white.  He personally expressed his anger over my filing of the complaint, and then proceeded to engage in an on-going campaign of retaliatory disciplinary action against me which had no basis.

## ANALYSIS

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000).  "A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it.'" *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (internal citations omitted).  "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

To prevail on his Title VII retaliation claim, Carty must show: (1) he engaged in activity protected by Title VII; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action.  *O'Neal v. City of Chicago*, 588 F.3d 406, 409 (7th Cir. 2009).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

I.  Carty's motion

Carty filed a motion for summary judgment [48], memorandum with exhibits [49], and a statement of facts [50].  In his motion he asserts: (1) he was discharged after Wilson wrote a memo based on Carty's alleged misconduct; (2) Carty had prior to that time filed a charge of discrimination and retaliation by the IEPA; and (3) prior to his discharge, Carty had reported and documented ongoing hostile and retaliatory conduct based on Wilson's anger over the EEOC charge.

In his memorandum, Carty states that his rights were violated by a reckless and baseless discharge after twenty years of service.  He attaches random documents – email messages, letters, memoranda, personnel action forms, and EEOC charges.

Carty's statement of facts delves into "five separate notices of intent to impose discipline" between the time he filed his charge of race discrimination and his termination.  However, his EEOC charge of retaliation specifically forecloses consideration of anything other than the five-day suspension.  *See Teal v. Potter*, 559 F.3d 687, 692 (2009) (requiring reasonable relationship between EEOC charge and complaint).  The EEOC charge specifies the date of discrimination is July 19, 2005.  This is the date on which Carty was notified of the suspension.  Moreover, Carty did not indicate that the retaliation was ongoing; the box used to indicate continuing action is not checked.  The discrete act of suspension cannot be used to support a continuing violation culminating in his termination (which is, in itself, a discrete act about which Carty apparently filed a separate EEOC charge).  *See, e.g., National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). There is no evidence that Carty ever filed an EEOC charge alleging a continuing pattern of retaliation.

The five-day suspension is the only event that is properly before the court.  In the summer of 2005, Carty planned to take leave time. He had told people that he planned to do so but had never put in for the time.  Before he left, the lab's quality control officer had problems with some of Carty's test data and ordered that it not be "reported out."[2]  Because the work was not completed, Carty was told that his leave request was denied.  Carty states that he worked late for several nights to get the work completed so that it could be reported out.  Carty claims that he completed the work and "just needed to reenter it into the system."  Carty Dep. 41.  Carty also claims that the data *was* updated in the system.  Carty Dep. 44. (This is one of several internal inconsistencies in his deposition.)  Carty left the leave slip in the secretary's office, despite the fact that leave had been denied, and went on vacation. He admits that it is fair to say that as far as anyone in the time office was concerned, he didn't have authorization to take time off.  This resulted in the July 19, 2005, suspension without pay.  Carty admits that he is the only person he knows of who took time off after the leave request was denied.  Carty Dep. 49. Viewed in the

---

[2] "Reporting out" apparently means that the report of the test results has not been finalized.  If communities do not receive proper reports on water testing, they can be fined.  Carty Dep. 25.

3

light most favorable to the IEPA, Carty cannot show that the suspension was causally connected to anything other than taking leave time after he was told that he could not do so.

In sum, Carty cannot expand his EEOC charge of a one-time suspension into a pattern of retaliatory conduct that ended with his termination. Furthermore, any causal connection between the protected activity and the suspension is supported by nothing more than Carty's speculation.

Carty's motion for summary judgment [48] is denied.

## II.  The IEPA's motion

The IEPA has filed a motion for summary judgment, arguing that (1) Carty could not have had a sincere and reasonable belief that he opposed an unlawful practice; (2) Carty cannot show a causal connection between the protected activity and the suspension; and (3) the only discrete act that is the subject of this lawsuit is the July 2005 suspension.

Carty must make a prima facie case of retaliation by showing: (1) he engaged in statutorily protected expression; (2) he suffered an adverse action at the hands of his employer, and (3) there was a causal link between the two.  *O'Neal*, 588 F.3d at 409.

The court need go no further than the IEPA's first argument: Carty did not engage in protected activity.  Carty's retaliation claim refers to the filing of three previous charges, one of which is the EEOC charge stemming from Wilson's promotion.[3]  A plaintiff must have "reasonably believed in good faith that the practice [he] opposed violated Title VII." *Fine  v. Ryan Intern. Airlines*, 305 F.3d 746, 752 (7th Cir. 2002).  "It is improper to retaliate against anyone claiming a violation of Title VII unless that claim is 'completely groundless.'" *Fine*, 305 F.3d at 752 (*quoting McDonnell v. Cisneros*, 84 F.3d 256, 259 (7th Cir. 1996)).  "A groundless claim is one resting on facts that no reasonable person possibly could have construed as a case of discrimination."  *Fine*, 305 F.3d at 752.

In his EEOC charge, Carty claimed that he was "discriminated against based on my race, Black" when the IEPA promoted a "less qualified Hispanic."  When deposed, Carty said that Wilson had "told us what his heritage was.  He said he was Hispanic."  Carty Dep. 11.  He conceded that Wilson, like Carty, is Black and, Carty said, Wilson had no accent so Carty "definitely wouldn't have guessed Hispanic.  He said he was from Puerto Rico, so I accepted his word at that."[4]  Carty Dep 11-12.  When deposed, Wilson stated that he was born in Chicago.

---

[3] Carty's complaint does not allege that the retaliation was based on any protected activity other than the EEOC charge relating to Wilson's promotion.

[4] This is an odd distinction.  Carty was born in Tortola, British Virgin Islands.  He received a bachelor of science degree from the College of the Virgin Islands.  Yet in his EEOC charge he referred to himself as Black, and Wilson as Hispanic – based on nothing more than that Wilson was "from Puerto Rico."  Carty Dep. 11-12.

4

Wilson said that he is from Puerto Rico and he's always told people he was from Puerto Rico, but never said that he was Hispanic.  Wilson Dep. 9-10.  Carty concedes, "I may have worded my – my complaint wrongly.  I felt that – perhaps a racial basis was – was not accurate. . . . but I still think that the entire context of this hiring suggested that it was – that more qualified applicants were overlooked. . . . There was also several white applicants who in my view . . . also didn't get the job."  Carty Dep. 15.  Carty cannot sue on behalf of other applicants.

Carty could not have "reasonably believed in good faith that the practice [he] opposed violated Title VII."  *Fine*, 305 F.3d at 752.  In his complaint he sidesteps the groundless EEOC charge and rephrases: "The hiring of Jon Wilson as laboratory manager was discriminatory even though he was an African-American."  Title VII does not require an employer to hire the most qualified candidate for every job; it merely prohibits employment actions that discriminate against individuals because of their race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  Carty was not discriminated against when the IEPA promoted someone of the same race and gender as himself.

Carty's after-the-fact rephrasing of the issue shows that he understood his EEOC charge to be groundless.  Having determined that Carty did not engage in protected activity, the case warrants no further discussion.

The defendant's motion for summary judgment [46] is granted.

<u>CONCLUSION</u>

For the foregoing reasons, the plaintiff's motion for summary judgment [48] is denied.  The defendant's motion for summary judgment [46] is granted.  This case is terminated.  The parties shall bear their own costs.

Entered this 28th  day of September, 2010.

**\s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

5